In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-4419

UNITED STATES *ex rel*. MICHAEL FOWLER,
PEPPI FOWLER, VICTOR CORTES,
and DANNY NEVAREZ,

*Plaintiffs-Appellants*,

*v.*

CAREMARK RX, L.L.C., and CAREMARK INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 8714—**Suzanne B. Conlon**, *Judge.*

ARGUED JUNE 6, 2007—DECIDED JULY 27, 2007

Before RIPPLE, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* The plaintiff—Relators are employees of Caremark. They filed a *qui tam* action under the False Claims Act. 31 U.S.C. § 3729 *et seq.* The district court held that subject matter jurisdiction existed but dismissed the complaint on the merits. On appeal, the Relators argue that the district court erred in dismissing the case while Caremark argues that the case should have been dismissed for want of subject matter jurisdiction. We conclude that subject matter jurisdiction exists and we affirm the judgment of the district court on the merits.

## I.  HISTORY

The United States government, like many employers, provides health insurance benefits to its employees. The government contracts with various private health insurance plans. Federal employees are able to choose among these private health insurance plans. Both the United States and individual federal employees make premium payments to the plans for the health coverage.

Many health plans provide prescription drug coverage as part of their benefit package for the participating federal employees. In turn, a number of these plans contract with Caremark to provide the prescription drug benefits provided under their respective plans. Caremark ultimately receives payment from the federal government and its employees for the prescription drugs and related services provided under the plans.

The Relators, (we call them Relators, they call themselves Whistleblowers), were employed by Caremark at two of its prescription drug processing facilities. The Relators brought a False Claims Act suit on behalf of the United States alleging that Caremark engaged in six fraudulent schemes: (1) failing to provide a credit for returned prescription drugs; (2) changing prescriptions without proper approval; (3) misrepresenting the savings obtained from its recommendations; (4) failing to substitute a generic version of "Prilosec;" (5) failing to credit for prescriptions lost in the mail; and (6) manipulating the mandatory times for filing prescriptions.

The Relators filed their original complaint under seal in December 2003. An amended complaint was also filed under seal in March 2004. In July 2004, the United States Attorney's Office for the Northern District of Illinois contacted Caremark and asked it to cooperate in an investigation of Caremark's business practices. From October 2004 through January 2006, Caremark disclosed

in excess of 113,000 pages of documents to the U.S. Attorney's Office. These documents included Caremark's contracts with the health insurance plans serving federal employees, invoices, quarterly reports, Caremark's internal reports, memoranda and training procedures. In January 2006, the government declined to intervene in this case and the case was unsealed by the district court in February 2006. In April and May 2006, the Relators obtained discovery materials from both Caremark and the U.S. Attorney's Office.

In May 2006, the district court granted Caremark's motion to dismiss the first amended complaint holding that the complaint failed to meet the heightened pleading requirements of Rule 9(b). *United States ex rel. Fowler v. Caremark RX, Inc.*, 03 C 8714, 2006 WL 1519567 (N.D. Ill. May 30, 2006). The Relators were granted leave to file a second amended complaint which they did in June 2006.

Caremark then argued that case should be dismissed pursuant to the jurisdictional bar contained in 31 U.S.C. § 3730(e)(4). Caremark's position was that the Relators' second amended complaint was based on publicly disclosed information and the Relators were not the original source of this information. The district court rejected Caremark's jurisdictional argument and held that the Relators met the requirements of § 3730(e)(4). *United States ex rel. Fowler v. Caremark RX, Inc.*, No. 03 C 8714, 2006 WL 2425331, at *4-6 (N.D. Ill. Aug. 21, 2006).

However on the merits, the district court held that despite increasing in size, the second amended complaint failed to meet the heightened pleading requirements of Rule 9. The second amended complaint consisted of 514 paragraphs spanning over 178 pages and also had over 1000 pages of attached exhibits. *Id.* at *3. The district court explained that despite its length, the second amended complaint failed to "identify a single prescription

through which Caremark perpetrated the alleged fraud. Nor do they tie a specific fraudulent transaction to an invoice submitted to the government. . . . [N]otice [sufficient to satisfy Rule 9(b)] is woefully inadequate where, as here, plaintiffs allege only generalized schemes and fail to specify a single false claim." *Id.* at *6-7.

The Relators were then given an opportunity to seek leave to file a third amended complaint. However, the district court warned the Relators that the case could be dismissed in its entirety if they failed to provide a proposed third amended complaint that complied with the federal rules. The Relators then tendered their proposed third amended complaint and sought leave to file the complaint. The district court rejected the proposed third amended complaint holding that it failed to meet the requirements of Rule 9(b). *United States ex rel. Fowler v. Caremark RX, Inc.*, 03 C 8714, 2006 WL 3469537 (N.D. Ill. Nov. 30, 2006). The district court, pursuant to Rule 15(a), denied the Relators' request to file the new amended complaint and entered a judgment dismissing the case in its entirety.

## II. ANALYSIS

### A.  *The Jurisdictional Bar of 31 U.S.C. § 3730(e)(4)*

Caremark argues that the district court lacked subject matter jurisdiction, pursuant to the jurisdictional bar set forth in § 3730(e)(4), because the Relators' claims are based on publicly disclosed information and the Relators are not the original source of this information. The Supreme Court has recently determined that § 3730(e)(4) is a jurisdictional requirement implicating subject matter jurisdiction and therefore no cross-appeal from Caremark is required. *Rockwell Int'l Corp. v. United States*, ___ U.S. ___, 127 S. Ct. 1397, 1405-07 (2007); *see generally*

*Luna v. United States*, 454 F.3d 631, 635 (7th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, ___, 126 S. Ct. 1235, 1244 (2006) (noting that a cross-appeal is not required when a party is contesting subject matter jurisdiction)); *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998)). We note that the Relators' proposed third amended complaint is the controlling document to be considered by this court. "[W]hen a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." *Rockwell*, 127 S. Ct. at 1409 (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).

Title 31, United States Code, Section 3730(e)(4) states:

> (A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

> (B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

31 U.S.C. § 3730(e)(4). "The bar is designed to deter parasitic *qui tam* actions. . . . [O]nce information becomes

public, only the Attorney General and a relator who is an 'original source' of the information may represent the United States*." United States ex rel. Gear v. Emergency Med. Assoc. of Illinois, Inc.*, 436 F.3d 726, 728 (7th Cir. 2006).

"The inquiry into whether a court may hear a qui tam relator's claim has three parts: (1) Have the allegations made by the plaintiff been 'publicly disclosed'? (2) If so, is the lawsuit 'based upon' that publicly disclosed information? (3) If so, is the plaintiff an 'original source' of the information?" *United States ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 859 (7th Cir. 1999) (citing *United States ex rel. Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 564 n.4 (11th Cir. 1994)); *see also Gear*, 436 F.3d at 728; *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003).

Before we begin the analysis, it should be noted that there are three types of information in the Relators' possession in this case. First is the Relators' "inside" information that they obtained during their work at Caremark. Second is the information disclosed by Caremark directly to the Relators. Third is the information disclosed by Caremark to the U.S. Attorney's Office and then passed from the U.S. Attorney's Office to the Relators.[1]

---

[1] The record is somewhat limited as to the scope of the U.S. Attorney's Office's investigation. It is clear that U.S. Attorney's Office contacted Caremark to investigate Caremark's business practices and Caremark provided information in return. This information was then disclosed by the U.S. Attorney's Office to the Relators. The record does not reflect, however, whether the U.S. Attorney's Office was engaged in a civil or criminal investi-

(continued...)

*Issue 1:    Have the Allegations made by the Plaintiff been "Publicly Disclosed"?*

"A 'public disclosure' exists under § 3730(e)(4)(A) when the critical elements exposing the transaction as fraudulent are placed in the public domain." *Feingold*, 324 F.3d at 495 (citing *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1512 (8th Cir. 1994); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994)). "The point of public disclosure of a false claim against the government is to bring it to the attention of the authorities, not merely to educate and enlighten the public about the dangers of misappropriation of their tax money." *Mathews*, 166 F.3d at 861.

"Disclosure of information to a competent public official about an alleged false claim against the government [is a] public disclosure within the meaning of § 3730(e)(4)(A) when the disclosure is made to one who has managerial responsibility for the very claims being made." *Id.* The more open a public disclosure, the less any specific public official needs to be informed. *Id.* Conversely, "[i]f the disclosure is made . . . to precisely the public official responsible for the claim, it need not be disclosed to anyone else to be [a] public disclosure within the meaning of the Act." *Id.* And, of course, "disclosure to the government by a *qui tam* plaintiff of the information on which the complaint is based, as mandated in § 3730(a)(2), is not 'public disclosure' under § 3730(e)(4)(A)." *Id.* at 862.

Caremark's disclosure of information to the U.S. Attorney's Office during the government's investigation of

---

[1] (...continued)
gation. Specifically, the record does not tell us whether a grand jury was involved in the investigation. Grand juries, of course, are governed by Rule 6 of the Federal Rules of Criminal Procedure including the secrecy requirements of Rule 6(e)(2).

Caremark's business practices qualifies as a public disclosure of the Relators' allegations. The scope of the investigation involved whether Caremark defrauded the federal government through its participation in the federal employee health insurance programs. The U.S. Attorney is the primary legal representative of the United States within his or her respective district, 28 U.S.C. § 547, and would be the public official responsible for bringing criminal or civil claims against Caremark on this issue. Thus, the Relators' allegations have been publicly disclosed.

*Issue 2: Is the Lawsuit "Based Upon" that Publicly Disclosed Information?*

"[A] lawsuit is based upon public[ly] disclose[d information] when it 'both depends essentially upon publicly disclosed information and is actually derived from such information.'" *Feingold*, 324 F.3d at 497 (quoting *Mathews*, 166 F.3d at 864). Caremark notes that our standard conflicts with the standard adopted by the majority of circuits and argues that we should reconsider our position in light of this conflict.

The majority of circuits apply the standard "that a qui tam action is 'based upon' a public disclosure when the supporting allegations are 'the same as those that have been publicly disclosed . . . regardless of where the relator obtained his information.'" *Mathews*, 166 F.3d at 863 (quoting *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 324 (2d Cir. 1992)) (citing *United States ex rel. Kreindler & Kreindler v. United Tech. Corp.*, 985 F.2d 1148, 1158 (2d Cir. 1993); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652-55 (D.C. Cir. 1994); *United States ex rel. McKenzie v. BellSouth Telecomm., Inc.*, 123 F.3d 935, 940 (6th Cir. 1997); *United States ex rel. Wang v. FMC Corp.*, 975 F.2d 1412, 1417 (9th

Cir. 1992); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992); *United States ex rel. Cooper v. Blue Cross and Blue Shield of Florida, Inc.*, 19 F.3d 562, 566-67 (11th Cir. 1994)); *see also United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 334-35 (3d Cir. 2005); *Federal Recovery Servs. v. United States*, 72 F.3d 447, 451 (5th Cir. 1995); *United States ex rel. Minnesota Assoc. of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1044-47 (8th Cir. 2002). In *Mathews*, we declined to adopt the majority standard and instead adopted our current standard from the Fourth Circuit's decision *United States ex rel. Siller v. Becton Dickinson & Co. Mathews*, 166 F.3d at 863 (citing 21 F.3d 1339, 1347-48 (4th Cir. 1994)).

In *Mathews*, we explained that the Fourth Circuit's standard of "'based upon' is . . . better on the grounds both of plain meaning and public policy." *Id.* The plain language argument is that "'based upon' does not mean 'similar (even identical) to' but 'derived from.'" *Id.* (quoting *Siller*, 21 F.3d at 1347-48). The public policy justification is that "information which happens to be similar or identical to publicly disclosed allegations or transactions, but which derives from some other source than the public disclosure, is not parasitic, and should not be barred by a provision meant to bar parasitic lawsuits." *Id.* (quoting *Siller*, 21 F.3d at 1348).

In *United States ex rel. Mistick PBT v. Housing Auth. of the City of Pittsburgh*, the Third Circuit analyzed the circuit split and concluded that there was "merit" on both sides of the split. 186 F.3d 376, 386 (3d Cir. 1999) (Alito, J.). According to the *Mistick* court, although the minority standard was a more faithful plain language interpretation, the interpretation would render the "original source" exception largely superfluous. *Id.* Thus, the circuit split was framed as "a clash between two textual arguments

concerning the meaning of 31 U.S.C. § 3730(e)(4)(A): one based on the ordinary meaning of the phrase 'based upon' and one based on the precept that a statute should be construed if possible so as not to render any of its terms superfluous." *Id.* at 387 (citations omitted). Citing various drafting errors in the statute, the Third Circuit determined that "[t]he inescapable conclusion is that the qui tam provision does not reflect careful drafting [and therefore] we are hesitant to attach too much significance to a fine parsing of the syntax." *Id.* at 388. Consequently, it rejected the plain language interpretation of the minority standard and determined the majority standard to be superior.

Then-Chief Judge Becker dissented from the *Mistick* decision. He noting that (1) traditionally courts defer to the plain language interpretation of statutes, (2) there were several plausible situations in which the plain meaning interpretation would not make the "original source" clause superfluous, (3) the plain meaning interpretation was consistent with how Congress had used "based upon" in another statute, and (4) the plain language interpretation was consistent with both the False Claims Act's underlying policy and legislative history. *Id.* at 395-403 (Becker, C.J., dissenting).

We reject Caremark's invitation to alter our position and reaffirm our adherence to the standard that "[a] lawsuit is based upon public[ly] disclose[d information] when it both depends essentially upon publicly disclosed information and is actually derived from such information." *Feingold*, 324 F.3d at 497. "In a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190

(1991)). Both the majority and minority standard have rallied powerful arguments to their respective sides, but the minority standard holds the trump card, the plain language interpretation. We may be in the minority, but we will not jettison a standard when that standard includes an appropriate plain language interpretation of the statute.

Returning to the jurisdictional analysis, we must determine whether the Relators' proposed third amended complaint (1) depends essentially upon publicly disclosed information and (2) is actually derived from such information. *Feingold*, 324 F.3d at 497. The Relators' proposed third amended complaint will not meet the jurisdictional bar of § 3730(e)(4) if the Relators used materials that they received from the U.S. Attorney's Office. However, the complaint will meet the jurisdictional requirement if it is only based on other materials such as the Relators' "inside" knowledge that they obtained while working at Caremark and Caremark's disclosures made directly from Caremark to the Relators.

In its review of the second amended complaint, the district court determined that the Relators based their complaint on their "inside" information and information obtained directly from Caremark's direct disclosure to the Relators. Thus, jurisdiction was present, according to the district court because there was no evidence of information being used from the U.S. Attorney's Office's disclosure. Of course, the proposed third amended complaint is the controlling document to be considered because the district court has dismissed the second amended complaint on Rule 9 grounds, and now the Relators seek leave to file their proposed third amended complaint. However, based on the fact that the Relators' practice has been to build current complaints off of prior complaints, and Caremark has not pointed to any indication in the proposed third complaint that the U.S. Attorney's Office

material was used in any way to construct the proposed complaint, we conclude that the proposed third amended complaint is not actually derived from any publicly disclosed information provided by Caremark to the U.S. Attorney's Office and then passed onto the Relators.

Caremark has not pointed to specific items in the complaint that it says comes from the U.S. Attorney's Office's disclosure. Instead, Caremark's position is that the U.S. Attorney's Office disclosure, and the discovery disclosure it made directly to the Relators, consist essentially of identical information. Thus, Caremark argues that it is irrelevant whether the Relators faithfully limited themselves to the discovery disclosures that they received directly from Caremark and abstained from including the U.S. Attorney's Office material in the complaint. Ultimately, according to Caremark, it is all the same material, regardless of which copy was used by the Relators in preparing their proposed third amended complaint.

At first glance, there is logic to Caremark's position. The argument raises the question of what is the legal importance of whether the Relators took their information for the complaint from Caremark's disclosure or the U.S. Attorney's Office's disclosure? It is the same material after all. However, what this argument really does is return us to Caremark's prior argument that we should abandon our current standard and instead adopt the standard from the majority of other circuits. And as we discussed above, we are unwilling to do this.

Congress said that, "No court shall have jurisdiction over an action under this section *based upon the public disclosure* of allegations or transactions . . ." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). Congress *did not* say, "No court shall have jurisdiction under this section based upon the public disclosure of allegations or transactions

*or material that is the same or substantially the same as the public disclosure . . . .*"

This is more than a mere blind adherence to the plain language of the statute. Congress is trying to balance two policies in this statute. On one side, Congress wants insiders to come forth with information about fraudulent claims when this information is not otherwise publicly available. On the other hand, Congress does not want self-serving opportunists, who do not possess their own insider information, to get in on the action and try to collect on parasitic claims when the allegations have already been publicly disclosed and the opportunists have nothing new to add. The "based upon" language in § 3730(e)(4)(A) is the means through which Congress strikes the balance between these two competing policies. If we rewrite the statute to effectively include the "same or substantially the same" language, we are eliminating otherwise valid insider claims that Congress currently allows to go forth. Perhaps, this class of claims should be eliminated, but that is a policy choice reserved for the Congress and we must respect its current decision. As the Relators' proposed third amended complaint does not appear to be based upon publicly disclosed information, the jurisdictional bar of § 3730(e)(4) does not apply and therefore we shall turn to the merits.

## B. The Merits

The district court determined that the Relators' proposed third amended complaint did not meet the heightened pleading requirements of Rule 9(b), refused the Relators leave to file the amended complaint under Rule 15(a), and dismissed the case. "We review a denial of a motion for leave to amend a pleading under an abuse of discretion standard." *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 968 (7th Cir. 1996) (citing *Moore v. Indiana*, 999 F.2d

1125, 1128 (7th Cir. 1993)). Rule 15(a) states that "leave [to amend] shall be freely given when justice so requires." FED. R. CIV. P. 15(a). "Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice or if the pleading is futile." *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962); *Bethany Pharm. Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001)). Amending a complaint would be futile if the proposed amended complaint fails to satisfy the requirements of the federal rules. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). Despite the fact that the deficiencies could be cured through an appropriate pleading, a district court properly exercises its discretion in dismissing the case when the plaintiff continually fails to provide a valid pleading in compliance with the federal rules. *See Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1322-23 (7th Cir. 1998) ("[T]he plaintiff has had three chances over the course of three years to state a claim and the district judge was not required to give her another chance.").

We review a dismissal for failure to comply with Rule 9(b) *de novo* and take all factual allegations in the complaint as true and make all reasonable inferences in the plaintiffs' favor. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *General Elec. Capital Corp.*, 128 F.3d at 1078; *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 725-26 (7th Cir. 1998)). "The [False Claims Act] is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)." *United States ex rel. Gross v. AIDS Research Alliance-Chicago*, 415 F.3d 601, 604 (7th Cir. 2005) (citing

*United States ex rel. Garst v. Lockhead-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)).

Rule 9(b) requires that "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." FED R. CIV. P. 9(b). "A principal purpose for requiring that fraud be pleaded with particularity is, by establishing this rather slight obstacle to loose charges of fraud, to protect individuals and businesses from privileged libel (privileged because it is contained in a pleading)." *Kennedy v. Venrock Assoc.*, 348 F.3d 584, 594 (7th Cir. 2003) (citations omitted). The heightened pleading standard requires "the plaintiff to do more than the usual investigation before filing his complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted). "A complaint alleging fraud must provide 'the who, what, when, where and how.'" *Borsellino*, 477 F.3d at 507 (quoting *Gross*, 415 F.3d at 605; *Dileo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

The False Claims Act imposes civil liability for a series of actions under § 3729(a). The two applicable sections for this case are §§ 3729(a)(1) and (a)(2). Under § 3729(a)(1), civil liability is imposed on any person who knowingly presents a false claim to the government for payment or approval. 31 U.S.C. § 3729(a)(1). To establish a claim under this section, "a relator must prove three elements: (1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." *United States ex rel. Walker v. R&F Prop. of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005). Section 3729(a)(2) prohibits a person from knowingly making a false record or statement to get a

false or fraudulent claim paid or approved by the government. 31 U.S.C. § 3729(a)(2). The three elements of a § 3729(a)(2) claim are: "(1) the defendant made a statement in order to receive money from the government, (2) the statement was false, and (3) the defendant knew it was false." *United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853, 856 (7th Cir. 2006) (quoting *Gross*, 415 F.3d at 604).

The first alleged fraud involves billing for returned prescriptions. The Relators allege that a percentage of federal employees who received prescription drugs under their respective health plans returned the drugs unused to Caremark. Despite receiving the returned merchandise, the Relators allege that Caremark continued to bill the government for the cost of these medications or failed to provide a refund if the government had already paid before the return was made by the federal employee. The Relators also argue they have identified specific transactions with particularity as they identified individual prescriptions that were returned to Caremark and corresponding invoices in which Caremark continued to bill for this returned merchandise.

We recently addressed a similar type of alleged scheme in *Crews*. *Crews* involved a false claims suit brought by a pharmacist who worked at a pharmacy providing pharmaceutical services to nursing homes in the local area. 460 F.3d at 854. Approximately 60% of the nursing home patients served by the pharmacy were on Illinois Medicaid—which is jointly funded by the State of Illinois and the Social Security Administration—thus implicating the False Claims Act. *Id.* Prescriptions would often be returneded unused to the pharmacy, for example when a nursing home patient died. *Id.* at 855. The returned medicine would then be recycled and reused by the pharmacy. *Id.* However, the pharmacy, which we characterized

as "shoddy," *id.* at 854, did not properly restock the returned medicine but instead commingled the returned drugs in garbage cans. *Id.* at 855. In turn, the labels for the reissued medicine did not properly reflect the lot number or expiration date. *Id.* This type of mislabeling is a violation of federal law and the pharmacy was eventually shut down by the government. *Id.*

After the pharmacy was shut down, Crews decided to do a little math. She saw that 60% of the pharmacy's patients were on Medicaid and that 10 to 20% of the dispensed medications were returned, recycled and reissued by the pharmacy. *Id.* at 856. Consequently, Crews concluded that 6% to 12% of the recycled medications would have been redistributed to Medicaid patients, resulting in double billing and therefore false claims. *Id.* However, we rejected this argument because Crews had failed to provide two vouchers representing two separate charges for the same pill. *Id.* at 857.

The Relators present arguments as to Caremark's billing for returned prescriptions fail for the same reason. The Relators allege that they have particularized evidence demonstrating that Caremark billed for prescriptions despite the fact that they were returned. However, like the situation in *Crews*, the Relators only have one-half of the evidence they need to survive under Rule 9(b). The Relators do not present any evidence *at an individualized transaction level* to demonstrate that Caremark failed to provide an appropriate refund or replacement product for a returned prescription. The Relators see the returned prescription but they do not know whether Caremark replaced the returned prescription with another prescription without charge. The Relators also see an invoice seeking payment for a prescription they allege has been returned and should not be paid, but they do not have any evidence to demonstrate that Caremark failed to

reconcile this excess payment on a future invoice or through an otherwise proper accounting technique.

The core of the Relators' failure in this case is caused by their misunderstanding of what is required to bring a cause of action under §§ 3729(a)(1) and (a)(2). Both sections require a false claim or statement and knowledge that the claim or statement is false. *Crews*, 460 F.3d at 856; *Walker*, 433 F.3d at 1355. Remember what the Relators' employment positions were at Caremark, they worked at two of Caremark's distribution facilities. Thus, it makes sense that they would see drugs being returned and this could raise their suspicions. But what they lack is knowledge of Caremark's financial activities and in particular how Caremark addressed these returns. The Relators err by assuming, without any support, that once a prescription was returned, Caremark automatically either kept the money or continued to bill without providing an appropriate credit to the government or replacement prescription to federal employees.

Furthermore, a person must *knowingly* present a false claim to the government for payment or *knowingly* make a statement in order to receive payment from the government. 31 U.S.C. §§ 3729(a)(1), (a)(2) (emphasis added). "The *mens rea* element, 'knowingly,' requires that the defendant have actual knowledge of (or deliberately ignore or act in reckless disregard of) the truth or falsity of the information. . . . Thus, 'innocent mistakes or negligence are not actionable." *United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 544 (7th Cir. 1999) (citing 31 U.S.C. § 3729(b); *Hindo v. Univ. of Health Sci. / The Chicago Med. Sch.*, 65 F.3d 608, 613 (7th Cir. 1995)). Although the proposed third amended complaint and its accompanying exhibits span several hundred pages, the Relators fail to provide any information addressing whether Caremark knowingly took any improper actions sufficient to implicate the False Claims Act.

It is also important to stop at this point of the discussion and note the scope of our review. We are reviewing the Relators' proposed third amended complaint to determine whether the Relators have met the requirements of the federal rules. As to this alleged scheme, and as we shall see with all the alleged schemes, the Relators have failed to meet the Rule 9(b) pleading requirements. That is our only purpose here and we leave it to others, whether other relators, the government, consumers, the press, or Caremark itself, if any group so chooses, to determine whether there are problems with Caremark's business practices. We are simply holding today that the district court properly dismissed the case because the Relators, after being given several chances, could not fashion a complaint in compliance with the federal rules.

The Relators next argue that their proposed third amended complaint satisfies Rule 9(b) as to the allegations made about the "CCM Program." The CCM Program involved a cost saving procedure. Caremark and the participating private health plans reached an agreement under which Caremark would review submitted prescriptions and determine whether the prescribed drug could be appropriately replaced by a less expensive alternative. Caremark, however, could not unilaterally change the prescription but instead had to contact the prescribing doctor who had issued the original prescription. If the doctor agreed to take Caremark's cost saving suggestion, Caremark was allowed under the agreement to bill the health plans for a percentage of the savings. The Relators allege that Caremark did not properly contact the prescribing doctor before making the cost saving substitution. Thus, the Relators allege that Caremark submitted false claims when it submitted invoices for the cost savings on prescriptions that were altered despite not being previously approved by the prescribing physician.

This allegation also fails because the Relators do not provide any information to satisfy the knowledge requirement of the False Claims Act. There is no evidence in the proposed third amended complaint that Caremark had actual knowledge of this issue or otherwise ignored or disregarded this situation. At best, the "scheme" as currently alleged by the Relators merely rises to a breach of contract dispute between the health plans, the government and Caremark. The Relators' position taken in relation to this scheme, and permeating throughout this entire case, is effectively that any allegedly inaccurate claim is by definition a false claim. This standard would transform every inaccurate claim into a false claim and consequently replace the Act's knowledge requirement with a strict liability standard.

Finally, the Relators alleged three other schemes. They argue that Caremark committed fraud when it refused to substitute a generic for the name brand drug "Prilosec." The Relators also allege a "Lost in Transit" scheme and a "Turnaround" scheme. The Relators take issue with the district court, arguing that the district court dismissed these claims with a minimal amount of explanation. Yet, the Relators' brief before this court discusses each scheme over one page each for a total of three pages for all three schemes. The total citation to authority in the three pages of briefing consists of one case from the Eastern District of Pennsylvania. "We repeatedly have made clear that perfunctory and undeveloped argument, and arguments that are not supported by pertinent authority, are waived." *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006) (citations omitted). As such the Relators' arguments on these three schemes are waived. Additionally, should we reach the merits, consistent with our previous discussion, the Relators have failed to provide any indication that Caremark knowingly engaging in a fraud.

In conclusion, the Relators' proposed third amended complaint does not meet the requirements of the federal rules. Therefore, the district court properly exercised its discretion in denying the Relators' motion to amend their pleading and in dismissing the case.

### III.  CONCLUSION

The judgment of the district court is AFFIRMED.

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*