RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 08a0180p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA, ex rel. CLAUDIA
MARLAR; and CLAUDIA MARLAR,

　　　　　　　　　　　　*Plaintiffs-Appellants*,

　　　　*v.*

BWXT Y-12, L.L.C.,

　　　　　　　　　　　　*Defendant-Appellee*.

No. 07-6051

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 04-00415—Thomas A. Varlan, District Judge.

Argued: May 1, 2008

Decided and Filed: May 13, 2008

Before: KENNEDY and MARTIN, Circuit Judges; HOOD, District Judge.[*]

---

### COUNSEL

**ARGUED:** Leonard Egan, Washington, D.C., for Appellants. Glenn V. Whitaker, VORYS, SATER, SEYMOUR & PEASE, LLP, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Leonard Egan, Washington, D.C., Ronald J. Zuker, VAUGHAN & ZUKER, Knoxville, Tennessee, Stephen R. Felson, Cincinnati, Ohio, for Appellants. Glenn V. Whitaker, Michael J. Bronson, Victor A. Walton, Jr., VORYS, SATER, SEYMOUR & PEASE, LLP, Cincinnati, Ohio, Kenneth M. Brown, BWXT Y-12, Oak Ridge, Tennessee, John C. Burgin, Jr., KRAMER RAYSON, LLP, Knoxville, Tennessee, for Appellee.

---

### OPINION

---

KENNEDY, Circuit Judge. Ms. Claudia Marlar filed this action against her former employer, BWXT Y-12, L.L.C. ("BWXT"), alleging that it had violated the False Claims Act ("FCA") by defrauding the United States government, in violation of 31 U.S.C. § 3729(a)(1)-(3), and by discharging her in retaliation for whistleblowing, in violation of 31 U.S.C. § 3730(h). The district court held that Ms. Marlar's claim of fraud was not pleaded with specificity, and therefore

---

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

her cause of action was dismissed for failure to comply with Federal Rule of Civil Procedure 9(b). The district court also held that Ms. Marlar failed to allege the elements necessary to establish a cause of action for retaliation, and therefore dismissed her complaint for failure to comply with Federal Rule of Civil Procedure 8(a). Ms. Marlar claims that both determinations are in error. We find that the district court properly dismissed Ms. Marlar's fraud complaint, as Ms. Marlar failed to identify a single false claim and did not establish the specifics of the alleged fraud. We find, however, that Ms. Marlar adequately pleaded a cause of action for retaliation. We therefore affirm in part and reverse in part the district court's decision, and we remand for further proceedings consistent with this opinion.

## BACKGROUND

### I. Factual Background

Ms. Marlar sued BWXT for allegedly defrauding the United States government and discharging her in retaliation for whistleblowing. Her complaint alleges that BWXT operates the Y-12 nuclear power facility in Oak Ridge, Tennessee pursuant to a contract with the United States Department of Energy ("DOE"). The contract at issue in this case began November 1, 2000 and covered a five-year operational period. The compensation paid to BWXT by DOE had fixed elements as well as performance-based elements. Each month, BWXT would report its performance to date to DOE. BWXT would then receive partial, quarterly payments based upon its reports. At the end of the fiscal year, BWXT would submit a certified Completion Form regarding its performance as well as a self-evaluation, and DOE would reconcile this with previous payments to determine whether any further performance-based compensation was due. If the contractual performance objectives were not met or only partially met, then DOE had discretion to adjust BWXT's compensation downward.

One contractual, performance-based element was BWXT's reports from its Environment, Safety, and Health division. The Environment, Safety, and Health division was responsible for evaluating and reporting work-related accidents, injuries, and illnesses. Reportable instances included "all new work-related injuries that result[ed] in: (1) death; (2) days away from work; (3) restrictions on work; (4) transfer to another job; ([5]) medical treatment beyond first aid; or ([6]) loss of consciousness." J.A. at 13 (Compl. ¶ 24). "Medical treatment beyond first aid include[d] the administration of any prescription drug (except those used for diagnostic purposes) or of non-prescription drugs at above normal dosages or strengths." J.A. at 14 (Compl. ¶ 27). BWXT received greater compensation for fewer reports of work-related accidents, injuries, and illnesses.

These contractual, performance measurements regarding work-related injuries and illnesses were consistent with BWXT's other reporting duties. For instance, BWXT was required to complete standard OSHA forms to record covered work-related injuries and illnesses.

Ms. Marlar is a certified nurse practitioner who worked in BWXT's Occupational Health Services division ("OHS"). OHS was a subdivision of BWXT's Environment, Safety, and Health division. Ms. Marlar was employed by BWXT from April 8, 2002 until she was terminated on January 16, 2004.

Ms. Marlar alleges that during her tenure at BWXT, the company engaged in "systematic and significant underreporting of work-related injuries and illnesses and time missed from work." BWXT allegedly underreported such incidents so as to inflate its performance-based compensation under the DOE contract. BWXT, therefore, purportedly submitted false and fraudulent "monthly reports, [yearly] Completion Forms and [] annual self-evaluation[s]." J.A. at 18 (Compl. ¶ 54).

Ms. Marlar alleges a few specific occurrences of improper reporting. For instance, Ms. Marlar asserts that she treated particular, unidentified employees who told her that they were

being given prescription drugs as a result of work-related injuries, but the medical records of the employees did not include those prescriptions. Ms. Marlar also alleges that in May of 2003, an unidentified employee had received an injection of a prescription drug due to a work-related head injury, and yet the injection was not noted in that employee's medical records. Ms. Marlar additionally provides other examples of purportedly improper reporting in 2002 and 2003 that generally fall into the category of failure to include receipt of a prescription drug in the unidentified recipient-employee's medical records. Ms. Marlar's other allegations generally concern unidentified, non-medical employees improperly making medical judgments regarding an employee's working condition so as to avoid reporting injures and illnesses.

After Ms. Marlar informed her management of her concerns regarding these allegedly improper reporting practices, BWXT terminated Ms. Marlar. Ms. Marlar alleges that, throughout her time at BWXT, she continually "objected to her superiors" about the sorts of incidents related previously. When an open forum for employee grievances was held, Ms. Marlar took the opportunity to again raise her objections to the allegedly improper reporting. Ms. Marlar asserts that because she persisted in questioning BWXT's reporting, she was placed on administrative leave on September 11, 2003. BWXT charged Ms. Marlar with insubordination, a charge which Ms. Marlar believes to be false.

On October 13, 2003, while on administrative leave, Ms. Marlar wrote to Mr. Dennis Ruddy, BWXT's president and general manager, regarding her placement on administrative leave. She told Mr. Ruddy "that she had learned that her computer had been 'cleaned out' because she refused to participate in illegal activities at OHS. She stated that the illegal activities included the underreporting of occupational injuries and illnesses resulting in large incentive payments to BWXT under the contract." J.A. at 19 (Compl. ¶ 60).

Ms. Marlar was eventually fired after writing to Mr. Ruddy. First, an employee relations representative contacted Ms. Marlar to gather additional information regarding "the circumstances of [Ms. Marlar's] being put on administrative leave and her allegations of underreporting." J.A. at 19 (Compl. ¶ 62). Ms. Marlar responded by writing a memo to the representative "reiterating that there was under-reporting of work-related injuries and illnesses and detailing the events of [the day Ms. Marlar was placed on administrative leave], when the alleged insubordination occurred." J.A. at 20 (Compl. ¶ 63). Ms. Marlar then received a letter, dated January 16, 2004, informing her that BWXT " 'determined that [her] allegations of inappropriate activity within [her] department that would lead to a retaliatory discharge [we]re unfounded.' " J.A. at 20 (Compl. ¶ 64). The letter also informed Ms. Marlar that she was terminated for insubordination. Ms. Marlar, however, maintains that she "was terminated because [she] br[ought] the underreporting of work-related injuries and illnesses to the attention of her superiors including the senior management of BWXT." J.A. at 20 (Compl. ¶ 64).

## II. Procedural Background

Ms. Marlar filed this *qui tam* suit against BWXT on September 8, 2004. She alleged that BWXT had violated 31 U.S.C. § 3729(a)(1)-(3) by submitting false reports and certifications regarding work-related injuries and illnesses, thereby increasing its performance-based, contractual compensation and defrauding DOE. Ms. Marlar also alleged that BWXT violated 31 U.S.C. § 3730(h) when it terminated her in retaliation for activities she took regarding BWXT's purported defrauding of the United States government.

BWXT filed a Rule 12(b)(6) motion to dismiss Ms. Marlar's complaint for failure to state a claim. It asserted that Ms. Marlar failed to plead her allegations of fraud against DOE with sufficient particularity, as required by Rule 9(b). It further contended that Ms. Marlar failed to allege facts to sustain an action for retaliation under § 3730(h).

The district court agreed with BWXT, and therefore dismissed Ms. Marlar's suit. The district court found that Ms. Marlar's claims of fraud were not pleaded with sufficient particularity. Specifically, it found her complaint insufficiently particular because Ms. Marlar "did not identify any specific claims that were submitted to the United States, [nor did she] indicate the dates [o]n which those claims were presented." J.A. at 59 (Dist. Ct. Op. at 11). The district court also found that the complaint was too general and over-relied upon allegations made on "information and belief." J.A. at 59 (Dist. Ct. Op. at 11).

The district court also found that Ms. Marlar failed to adequately plead her retaliation claim, and therefore similarly dismissed that claim. The district court held that "the complaint fail[ed] to properly allege the plaintiff's employer knew that she was engaged in any protected activity." J.A. at 60 (Dist. Ct. Op. at 12). More specifically, the complaint contained no "allegation[s] from which it could be inferred [that BWXT knew] that plaintiff was considering bringing a *qui tam* action herself or assisting the government in bringing an FCA action." J.A. at 60-61 (Dist. Ct. Op. at 12-13). The district court therefore dismissed Ms. Marlar's complaint.

## ANALYSIS

Ms. Marlar argues on appeal that the district court incorrectly dismissed her complaint. She asserts that her allegations of fraud against BWXT met Rule 9(b) because they were supported by sufficiently particular pleadings. Ms. Marlar additionally asserts that she has pleaded sufficient facts so as to sustain her claim of retaliation.

We review dismissals pursuant to Rule 12(b)(6) *de novo*. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). A complaint is properly dismissed when it fails to state a claim upon which relief can be granted. *Id.* Because we find that Ms. Marlar failed to adequately plead fraud in violation of Rule 9(b), we hold that her cause of action for violation of 31 U.S.C. § 3729(a)(1)-(3) was properly dismissed. Because we find, however, that Ms. Marlar adequately pleaded the elements of a retaliation claim under 31 U.S.C. § 3730, we reverse the district court's judgment dismissing this claim and remand the case to the district court for further proceedings consistent with this opinion.

### I. Compliance of Claims under 31 U.S.C. § 3729 with Rule 9(b)

Federal Rule of Civil Procedure 9(b) requires that parties "alleging fraud . . . must state with particularity the circumstances constituting fraud." To satisfy Rule 9(b), a complaint of fraud, "at a minimum, must 'allege the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.* (*Bledsoe I*), 342 F.3d 634, 643 (6th Cir. 2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (internal quotation marks and citations omitted)). Courts must proceed paragraph-by-paragraph to ensure compliance with Rule 9(b) "if the paragraphs of a relator's complaint allege separate and unrelated fraudulent conduct." *United States ex rel. Bledsoe v. Cmty. Health Sys.* (*Bledsoe II*), 501 F.3d 493, 509 (6th Cir. 2007). Where a complaint alleges "a complex and far-reaching fraudulent scheme," then that scheme must be pleaded with particularity and the complaint must also "provide[] examples of specific" fraudulent conduct that are "representative samples" of the scheme. *Id.* at 510 (emphasis removed).

There are multiple purposes for this heightened pleading requirement. Claims of fraud "raise a high risk of abusive litigation." *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1973 n.14 (2007); *see also Bledsoe II*, 501 F.3d at 510 (noting that Rule 9(b) is meant to protect defendants from "fishing expeditions and strike suits"); *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006) ("Rule 9(b) ensures that the relator's strong financial incentive to bring an

FCA claim–the possibility of recovering between fifteen and thirty percent of a treble damages award–does not precipitate the filing of frivolous suits."). Rule 9(b) is also meant to protect defendants from " 'spurious charges of immoral and fraudulent behavior.' " *Bledsoe II*, 501 F.3d at 510 (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)); *accord United States ex rel. Fowler v. Caremark RX, L.L.C.*, 730 F.3d 496, 740 (7th Cir. 2007) (" 'Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual).' " (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted)). Lastly, Rule 9(b) is intended to provide defendants with "notice of the specific conduct with which they were charged," so that the defendants can prepare responsive pleadings. *Bledsoe II*, 501 F.3d at 510.

The elements of an FCA action must be pleaded with the particularity required by Rule 9(b). *Yuhasz*, 341 F.3d at 563. Ms. Marlar alleged FCA claims under 31 U.S.C. § 3729(a)(1), (a)(2), and (a)(3). These subsections make liable:

> (a)(1) [any person who] knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

> (a)(2) [any person who] knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [and]

> (a)(3) [any person who] conspires to defraud the Government by getting a false or fraudulent claim allowed or paid.

The "claim" all of the subsections refer to is "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such . . . request[] or demand[]." 31 U.S.C. § 3729(c).

## A. Claims under Subsection (a)(1)

Ms. Marlar has failed to comply with Rule 9(b) for her claims under subsection (a)(1). We have previously held that an action under subsection (a)(1) requires proof that the alleged false or fraudulent claim was "presented" to the government. *See, e.g.*, *United States ex rel. Thacker v. Allison Engine Co.*, 471 F.3d 610, 614 (6th Cir. 2006); *Sanderson*, 447 F.3d at 877-78. Ms. Marlar has not pleaded any facts regarding whether the alleged false claims were in fact submitted to the government. Instead, Ms. Marlar relies on the general allegation, "[o]n information and belief," that BWXT submitted purported false claims to the government, and that DOE paid BWXT a fee that was based in part of the purported false claims. We have held, however, that alleging " 'that the defendants must have submitted fraudulent claims' to the government" does not satisfy a plaintiff's duty to plead with particularity under Rule 9(b). *See Sanderson*, 447 F.3d at 878 (quoting *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 557 (8th Cir. 2006)). Instead, a plaintiff must "identify [the] specific claims that were submitted to the United States," which Ms. Marlar has failed to do. *Id.* at 877 (internal quotation marks and citation omitted). "A plaintiff may not describe a[n alleged fraudulent billing] scheme in detail but then allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government. A plaintiff must provide some support for the allegation." *United States ex rel. Heater v. Holy Cross Hosp., Inc.*, 510 F. Supp. 2d 1027, 1034 (S.D. Fla. 2007) (internal quotation marks and citations omitted).

Ms. Marlar asserts that she has provided sufficient detail regarding the facts on which she has based her "belief" that the false claims were actually submitted to the government. She admits that she does not know what happened to the purportedly false reports after they left her division. She alleges, however, "[o]n information and belief" that the purportedly false reports were provided by the Environment, Safety, and Health division to senior management. She then alleges "[o]n information and belief" that the certification forms provided by BWXT to DOE were based on the purportedly false reports.

These allegations do not suffice. Ms. Marlar does not allege personal knowledge of the procedures through which BWXT compiled its Completion Forms, self-evaluation, or monthly reports that BWXT submitted to DOE. Ms. Marlar also fails to allege concrete facts, rather than inferences based "[o]n information and belief," to establish that fraudulent claims were in fact, once compiled, submitted to the government. She has not provided dates on which the purportedly false certifications were submitted, nor has she alleged who submitted the purportedly false certifications, nor has she alleged any other "specific information about the [certifications] allegedly submitted." *See Bledsoe II*, 501 F.3d 512-13. Indeed, worse yet, she has even failed to plead with specificity the allegations of which she allegedly has personal knowledge; she has not identified any of the patients whose medical records were allegedly incomplete, nor has she identified any of the non-medical, safety employees who were allegedly pressuring the medical employees to falsify medical records.

While we have before suggested that we may "relax[]" the pleading requirement when "a relator demonstrates that he cannot allege the specifics of actual false claims that in all likelihood exist," *Bledsoe II*, 501 F.3d at 504 n.12, this case does not call upon us to establish such an exception. Ms. Marlar does not allege a factual basis for her assertions that purportedly false records from OHS were used by Environment, Safety, and Health division management to complete reports, that those false reports were then provided to BWXT senior management, that BWXT senior management then used those reports to complete its certification requirements necessary for performance-based compensation under BWXT's contract with DOE, and that BWXT then allegedly submitted those certifications to the government.

The weakness of these allegations, and their consequent unfitness for an exception to the pleading requirement, is made clear when compared with the allegations in *United States ex rel. Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349 (11th Cir. 2005). In that case, the plaintiff was a nurse practitioner. *Walker*, 433 F.3d at 1353. She alleged that her employer was bilking Medicare and Medicaid by submitting fraudulent bills. *Id.* The fraudulent scheme involved charging the government for services rendered by a nurse practitioner as "incident to the service of a physician," and therefore being paid a higher fee, despite the fact that a physician was not physically present and only "available for consultation by pager and telephone." *Id.* As proof that the services of a nurse practitioner were always so charged in submitted claims, the plaintiff alleged that she did not have her own billing code, which would be required if the services were properly billed as being delivered only by a nurse practitioner, that she was told each day "which doctor she would be billing under," and that the office administrator had told her, after the plaintiff had asked why she did not have her own billing code, that the employer always billed nurse practitioners' services as "incident to the service of a physician." *Id.* at 1360. Ms. Marlar's allegations do not come close to these concrete factual allegations that the Eleventh Circuit found permitted an inference that false claims were actually submitted to the government.

## B. Claims under Subsections (a)(2) and (a)(3)

Ms. Marlar has similarly failed to comply with Rule 9(b) regarding her claims under 31 U.S.C. § 3729(a)(2) and (a)(3). While Ms. Marlar is correct that we have previously held that proof of "presentment" is not required for actions under subsections (a)(2) and (a)(3), *Thacker*, 471 F.3d

at 614-15,[1] we have repeatedly held that proof of a false claim is required, *e.g.*, *id.* at 621 ("For liability . . . under subsection (a)(2), the government . . . would have to present sufficient evidence from which the trier of fact could conclude that . . . *use of the false statement* resulted in the payment of a claim by the government."); *Bledsoe II*, 501 F.3d at 504 ("We hold that pleading an actual false claim with particularity[, as opposed to a false scheme,] is an indispensable element of a complaint that alleges a FCA violation in compliance with Rule 9(b)."); *see also Fowler*, 730 F.3d at 742 ("Both sections [(a)(1) and (a)(2)] require a false claim or statement and knowledge that the claim or statement is false."). Indeed, we have agreed with the Eleventh Circuit that a "fraudulent claim is 'the *sine qua non* of a False claims Act violation.' " *Sanderson*, 447 F.3d at 878 (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). The text of the subsections confirm our interpretation, as both subsections refer to "a false or fraudulent claim." 31 U.S.C. § 3729(a)(2), (a)(3).

Ms. Marlar has failed to allege facts regarding "a false or fraudulent claim." *See id.* A "claim" at least requires a "request or demand . . . for money or property." *Id.* § 3729(c). Ms. Marlar's specific factual allegations, however, only refer to omissions in medical records. The only pertinent, specific paragraphs in her complaint generally allege that on particular dates or in particular years an employee was given a prescription drug or prescription device, but the medical records failed to reflect that such a prescription was provided. Medical records, however, are not a "request or demand . . . for money or property." *Id.* § 3729(c).

Ms. Marlar has also failed to allege specific facts to establish that the medical records were always, or ever, used to compile BWXT's claims, namely its certifications regarding its performance, which included work-related injuries and illnesses. Instead, Ms. Marlar only alleges "[o]n information and belief" that reports "provided by the [Environment, Safety, and Health] Division to the senior management of BWXT were based on systematic and significant underreporting of work-related injuries and illnesses and time missed from work," and that the senior management then used this information to compile and submit certifications to DOE. J.A. at 18-19 (Compl. ¶ 53-55).

Ms. Marlar has provided no factual allegations, let alone specific factual allegations, regarding how reports regarding work-related injuries and illnesses were compiled by the Environment, Safety, and Health division. For instance, OHS, the subdivision of the Environment, Safety, and Health division for which Ms. Marlar worked, may have reported work-related injuries and illnesses to Environment, Safety, and Health staff. Alternatively, Environment, Safety, and Health staff may have gathered the pertinent information themselves. Either way, it is unknown how such information was in fact gathered (i.e., it is unknown if the information was gathered from the allegedly false medical records). " '[T]he False Claims Act does not create liability merely for a [claimant's] disregard of Government regulations or improper internal policies unless, as a result of such acts, the [claimant]' " makes a false claim. *See Atkins*, 470 F.3d at 1357 (quoting *Clausen*, 290 F.3d at 1311). Just because BWXT may have maintained incomplete or sloppy medical records, it does not necessarily follow that BWXT also submitted certifications to DOE that under-represented the number of work-related accidents and illnesses. BWXT could, for instance, have had an alternate reporting system for collecting information regarding work-related injuries and illnesses so that it could ensure that its certifications to DOE were accurate. Ms. Marlar has alleged

---

[1] We note that the Supreme Court has granted certiorari in *Thacker* to decide whether "presentment" is in fact required by subsections (a)(2) and (a)(3). *Allison Engine Co. v. United States ex rel. Sanders*, 128 S. Ct. 491 (2007). Because Ms. Marlar's claims under subsections (a)(2) and (a)(3) are not pleaded with the specificity required by Rule 9(b) even absent a "presentment" requirement, we see no need to await the Supreme Court's decision.

no specific facts to refute such a hypothesis.[2]  Ms. Marlar's claims under subsections (a)(2) and (a)(3), therefore, do not comply with Rule 9(b) because they fail to allege a false claim with specificity.[3]

## II.  Compliance of Claim under 31 U.S.C. § 3730(h) with Rule 8(a)(2)

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff's complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A claim under 31 U.S.C. § 3730(h) requires proof that the plaintiff was "(1) [] engaged in a protected activity; (2) [that] his employer knew that he engaged in the protected activity; and (3) [that] his employer discharged or otherwise discriminated against the employee as a result of the protected activity." *Yuhasz*, 341 F.3d at 566.  "Protected activity" means "lawful acts done by the employee on behalf of the employee or others in furtherance of an [FCA] action, including investigation for, initiation of, testimony for, or assistance in an [FCA] action filed or to be filed . . . ."  31 U.S.C. § 3730(h).

Ms. Marlar has complied with Rule 8(a)(2) regarding her claim under 31 U.S.C. § 3730(h). Specifically, Ms. Marlar has pleaded that she repeatedly "objected to her superiors" about the inaccurate medical records discussed above. J.A. at 19 (Compl. ¶ 57).  She raised similar objections during "an open forum where employees could express grievances or complaints."  J.A. at 19 (Compl. ¶ 58).   Ms. Marlar alleges that "as a result of these actions," she "was placed on administrative leave."  J.A. at 19 (Compl. ¶ 59).

While these allegations likely do not suffice to show that BWXT was on notice of Ms. Marlar's protected activity, *see Yuhasz*, 341 F.3d at 566 (element (2)),[4] Ms. Marlar alleges that she took further steps that would constitute notice to BWXT.  Specifically, Ms. Marlar alleges that she wrote a letter to the president and general manager of BWXT, Mr. Ruddy, asserting that she had been placed on administrative leave "because she refused to participate in illegal activities at OHS. [The letter further] stated that the illegal activities included the under[-]reporting of occupational injuries and illnesses resulting in large incentive payments to BWXT under the contract [with DOE]."  J.A. at 19 (Compl. ¶ 60).  When BWXT asked for more information regarding the alleged "illegal activities," Ms. Marlar told BWXT that "there was under-reporting of work-related injuries and illnesses."  J.A. at 20 (Compl. ¶ 63).  Ms. Marlar's allegations, if true, would mean that BWXT had defrauded the United States government, and Ms. Marlar made it clear that she understood that because she stated that BWXT's activities, which she more precisely defined as "under-reporting of work-related injuries and illnesses," were "illegal" and that BWXT obtained "large incentive payments" pursuant to the DOE contract because of its "illegal activities."

---

[2] Ms. Marlar alleges, for instance, that "[t]he only information upon which [Environment, Safety, and Health] could  have based its report, insofar as it related to its OHS[] component, was contained in the [medical] reports [Ms. Marlar] knew to be false."  J.A. at 34.  This allegation, however, is not, as discussed above, obviously true on its face, as Ms. Marlar assumes it to be.

[3] This rationale, Ms. Marlar's failure to plead a false claim with specificity, provides an alternative basis for dismissal of Ms. Marlar's claims under subsection (a)(1).  Subsection (a)(1) similarly requires, in addition to "presentment," that there be "a false or fraudulent claim."  31 U.S.C. § 3729(a)(1).  It is inadequate to simply allege that medical records were incorrect, and therefore assume, without any factual basis, that certifications to DOE regarding events that should have been included in the medical records were false.  Such an assumption fails to meet Rule 9(b)'s pleading requirements because it "do[es] not provide any specific information about the [certifications] allegedly [compiled]." *See Bledsoe II*, 501 F.3d at 512.

[4] Indeed, the previous allegations fall into the category of mere "grumbling" about violations, and therefore are not sufficient to prove BWXT was on notice regarding Ms. Marlar's protected activity. *See Yuhasz*, 341 F.3d at 567-68.

The district court, however, found Ms. Marlar's allegations regarding retaliation lacking because Ms. Marlar provided "no allegation from which it could be inferred that [BWXT knew that] [Ms. Marlar] was considering bringing a *qui tam* action herself or assisting the government in bringing an FCA action." J.A. at 60-61 (Dist. Ct. Op. at 12-13). The district court's holding, however, impermissibly narrows the interpretation we have given "protected activity." *See United States ex rel. McKenzie v. Bellsouth Telecomms., Inc. (McKenzie I)*, 123 F.3d 935, 944 (6th Cir. 1997). We held in *McKenzie* that a plaintiff must only allege activities "that would have given [the defendant] reason to believe that she was contemplating a qui tam action." *Id.* This test was drawn from *Mikes v. Strauss*, 889 F. Supp. 746, 753 (S.D.N.Y. 1995). *Mikes* found that a plaintiff is entitled to recovery under § 3730(h) when she alleges that she observed purportedly fraudulent activity, she confronted her employer about it, and her employer fired her because of it. 889 F. Supp. at 752-53. *Mikes* based part of its understanding of § 3730(h) on *Robertson v. Bell Helicopter Textron, Inc.* 32 F.3d 948 (5th Cir. 1994). In that case, the Fifth Circuit held that "internal whistleblowers" were protected by § 3730(h). *Robertson*, 32 F.3d at 951. *Robertson* described an "internal whistleblower" as "an employee who has made an intracorporate complaint about fraud against the government." *Id.* That complaint, the Fifth Circuit suggested, must "characterize[] [the plaintiff's] concerns as involving illegal, unlawful or false-claims" against the government. *Id.* at 952.

Ms. Marlar's complaint meets this standard. She alleges that she observed purportedly fraudulent activity and confronted her employer about it. Specifically, Ms. Marlar told BWXT that she believed BWXT was receiving "illegal" "large incentive payments" under its contract with DOE because BWXT was "under-reporting [its employees'] work-related injuries and illnesses." She therefore connected her complaint of BWXT's actions, under-reporting, to a concern about fraud on the federal government. *McKenzie v. BellSouth Telecomms., Inc. (McKenzie II)*, 219 F.3d 508,516 (6th Cir. 2000) (holding that to be protected by the FCA when confronting an employer, the employee "must sufficiently allege activity with a nexus to a *qui tam* action, or fraud against the United States government"). Ms. Marlar further alleges in her complaint that because she informed BWXT of her concerns, she was terminated. Given our interpretation of "protected activity" in *McKenzie*,[5] Ms. Marlar has adequately pleaded that she "(1) [] engaged in a protected activity; (2) [that] his employer knew that he engaged in the protected activity; and (3) [that] his employer discharged or otherwise discriminated against the employee as a result of the protected activity." *Yuhasz*, 341 F.3d at 566.[6]

---

[5] *McKenzie* was before us twice. In the initial appeal of the motion to dismiss, the plaintiff won reinstatement of her claim based on her pleadings. Specifically, *McKenzie* held that the plaintiff had sufficiently alleged protected activity because the plaintiff purportedly (1) showed her supervisors a newspaper article about a *qui tam* action against a similar company for the same allegedly fraudulent conduct; and (2) the plaintiff had complained about the allegedly fraudulent conduct, a complaint which was outside the scope of plaintiff's duties. *McKenzie I*, 123 F.3d at 944-45. On remand, however, the district court granted summary judgment to the defendant after it found that the newspaper article the plaintiff had shown to her supervisors did not refer to fraud against the federal government, did not refer to a *qui tam* action, and that the newspaper article had been generally distributed and displayed throughout her office. *See McKenzie II*, 219 F.3d at 514-15. We affirmed its judgment, finding that, absent the newspaper article as originally characterized in her complaint, the plaintiff had failed to establish a sufficient nexus between her internal complaints and a *qui tam* action. *Id.* at 517. A sufficient nexus was not established because while plaintiff had shown that she was under pressure to falsify records and had complained about such pressure within the company, she did not connect her complaint to a concern about the company committing fraud against the federal government. *Id.*

[6] Defendant for the first time asserted at oral argument that Ms. Marlar's retaliation claim should fail because it was part of her official duties to report the allegedly improper activities of which she complained. *Cf. Robertson*, 32 F.3d at 952; *see also United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 744-75 (D.C. Cir. 1998); *United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1523 (10th Cir. 1996). Failure to allege this in its brief, however, waives the issue. *See, e.g., Giesse v. Sec'y of Dept. of Health & Human Servs.*, __ F.3d __, No. 06-4497, slip op. at 6-7 (6th Cir. Apr. 23, 2008). Additionally, whether Ms. Marlar's job duties included reporting the alleged conduct is an issue of fact unfit for disposal in a motion to dismiss.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Ms. Marlar's claims under 31 U.S.C. § 3729, but we REVERSE, however, the district court's judgment dismissing Ms. Marlar's retaliation claim under 31 U.S.C. § 3730, and we REMAND for proceedings consistent with this opinion.