TOBY KAHR *et al.*, Plaintiffs-Appellees, v. KARON MARKLAND *et al.*, Defendants-Appellants.

Fourth District   No. 4—88—0934

Opinion filed August 24, 1989.

LUND, J., specially concurring.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (Stephen R. Kaufmann, of counsel), for appellant Land of Lincoln Goodwill Industries, Inc.

Zimmerly, Gadau, Selin & Otto, of Champaign, for appellant Karon Markland.

Toby Kahr and Rita Kahr, both of Chapel Hill, North Carolina, appellees *pro se.*

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This appeal concerns a replevin order entered against defendant Karon Markland (Markland), directing the return of sterling silver owned by the plaintiffs and sold to Markland by Land of Lincoln Goodwill Industries, Inc. (Goodwill). Markland and Goodwill contend the trial court erred in characterizing the silver as lost property when the evidence established that Toby Kahr entrusted the silver to Goodwill pursuant to section 2—403(3) of the Uniform Commercial Code—Sales (UCC) (Ill. Rev. Stat. 1987, ch. 26, par. 2—403(3)). Markland urges she received good title to the silver from Goodwill and is the true owner of the silver against the plaintiffs. We affirm.

This appeal concerns only the order entered for plaintiffs against Markland on count VI of their amended complaint against Goodwill and Markland filed on April 1, 1984, and amended on January 14, 1985. In count VI, plaintiffs alleged they were owners of 28 pieces of sterling silver of the "Joan of Arc" silver pattern manufactured by International Silver Company. The pieces were engraved with the letter "K." On April 5, 1983, plaintiffs brought sacks of used clothing for donation to Goodwill in Champaign. Unknown to the plaintiffs, the sterling silver was included in the sacks given to Goodwill, along with a wallet containing plaintiffs' credit cards. At the time the sacks were donated, plaintiffs informed Goodwill that plaintiffs' donation was used clothing. Later, on the same day, Goodwill sold the sterling silver to Markland for $15. Plaintiffs alleged the sale of silver to Markland was without their consent and, therefore, Goodwill transferred void title to the silver to Markland. Plaintiffs further alleged the value of the silver was $3,791 and sought an order of replevin for the silver and damages for the wrongful detention of the silver by Markland.

On June 29, 1988, Markland filed a third motion for summary judgment on count VI, two previous motions having been denied. In support of her motion, Markland submitted the depositions of Toby Kahr, Judy Taylor, a Goodwill employee, and her own deposition. Prior to ruling on this motion, the cause was called for a bench trial on counts I through VI of the complaint on July 18, 1988. At that time, all parties agreed to a summary bench trial, at which testimony

would be received and considered along with the depositions on file in support of the summary judgment motion.

At trial, Rita Kahr testified regarding how the silver was mistakenly included with the donation for Goodwill. She stated that the silver was put in bags to be put in her attic along with jewelry and credit cards when she and Toby went on vacation. After returning from vacation, the bags of valuables were put on the dining room table with sacks of clothes for Goodwill. When Toby took the bags of clothes to Goodwill, he mistakenly picked up the bags containing the silver. Approximately two hours after Toby returned from Goodwill, Rita asked where the silver was and then Rita and Toby realized it was taken to Goodwill. That same day, Toby called Goodwill and was told the pieces had been sold. Rita stated the silver was a wedding present 27 years previous from her father. Rita stated that no one told the Goodwill employees not to sell the silver but her husband did tell Goodwill the donation was clothing only. Toby's testimony in court and in his deposition substantiated Rita's statements. He also stated he knew the donation would be resold; however, he did not know the silver was in the bags with the clothing.

Judy Taylor, the Goodwill employee who received the plaintiffs' donations in April 1983, testified that she priced the silver after it was discovered and knew it was a bit nicer than other silver received by Goodwill. Taylor stated she discovered the wallet among the clothing after Toby left the store and called someone at the plaintiffs' home about the wallet. She did not mention the silver in the phone conversation because she had not yet discovered the silver. Taylor did not recall Toby stating the donation was clothing but remembered he did not want a receipt for the donation. According to Taylor, Toby became irate when he called concerning the items. Taylor stated she had no conversation with Markland regarding the silver. Taylor testified it was not uncommon for Goodwill to receive nice things in donations but she did not recognize the silver to be sterling.

Taylor testified in her deposition that Markland shopped at Goodwill almost everyday and on April 5 bought the silver within five minutes after it was received. Deborah Neese, director of operations for Goodwill, testified that Taylor had authority to price donations immediately and display them for resale.

Markland testified in her deposition that she worked for Goodwill for a short time in 1972 through 1973 as a sales clerk receiving donations. When she purchased the silver, Markland stated she knew it was not stainless steel but was uncertain whether the silver was sterling or silver plate. Markland stated she purchased the silver be-

cause of the monogram "K" on each piece and realized when she arrived at home that the silver was sterling. Markland stated she received a telephone call from Taylor and Neese asking her to return the silver but she refused.

The delivery of the bags to Goodwill, the call concerning the billfold, the sale of the silver, and Toby's call to Goodwill concerning the silver all occurred April 5, 1983.

The trial court found that the silver was lost property and relied principally on *Michael v. First Chicago Corp.* (1985), 139 Ill. App. 3d 374, 487 N.E.2d 403, to support its conclusion that title to the hidden silver did not pass by sale to Markland. The trial court also noted that the discovery of the wallet put Goodwill on notice that the plaintiffs possibly did not intend to give the silver to Goodwill. Under section 2—403 of the UCC, the trial court concluded that Goodwill was a "purchaser" by gift of the clothing but not of the silver, given that a purchase under the UCC involves a voluntary transaction (Ill. Rev. Stat. 1987, ch. 26, par. 1—201(32)) and the transaction was not voluntary as to the silver because it was unknown it was in the bags. Since Goodwill had no title or void title to the silver, Markland received no title to the silver and plaintiffs are the owners entitled to possession of the silver.

Markland urges this cause is governed entirely by section 2—403 of the UCC. (Ill. Rev. Stat. 1987, ch. 26, par. 2—403.) Markland urges the plaintiffs "entrusted" the silver to Goodwill, whether intentionally or otherwise, and under sections 2—403(2) and (3), she acquired title to the silver from the plaintiffs. Therefore, Markland maintains the trial court's emphasis on lost property is erroneous.

Goodwill urges the trial court's reliance on *Michael* and *Paset v. Old Orchard Bank & Trust Co.* (1978), 62 Ill. App. 3d 534, 378 N.E.2d 1264, is misplaced. Goodwill also maintains that public policy requires this court to reverse the trial court and find Goodwill had good title to transfer to Markland. Goodwill states that an affirmance by this court in this case would place an unreasonable burden on Goodwill and seriously hamper its ability to provide a valuable community service. Goodwill also insists it was not "put on notice," after the discovery of the plaintiff's wallet, that plaintiffs did not intend to donate the silver.

Sections 2—403(2) and (3) of the UCC provide:

> "(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business.

(3) 'Entrusting' includes any delivery and any acquiescence in retention of possession regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law." (Ill. Rev. Stat. 1987, ch. 26, pars. 2—403(2), (3).)

The UCC defines "delivery" as follows:

" 'Delivery' with respect to instruments, documents of title, chattel paper or certificated securities means voluntary transfer of possession." (Ill. Rev. Stat. 1987, ch. 26, par. 1—201(14).)

The above definition does not extend to goods. However, the comments on subsection (3) of section 2—403, as adopted in Illinois, state:

"This subsection, in defining the term 'entrusting' as used in subsection (2), combines and extends the policy set forth in [Uniform Sales Act] § 25 and [Uniform Trust Recipients Act] § 9. It includes *any voluntary transfer of possession by or with the consent of the entruster*." (Emphasis added.) Ill. Ann. Stat., ch. 26, par. 2—403(3), Illinois Code Comment, at 331 (Smith-Hurd 1963).

■■■ An entrustment requires four essential elements: (1) an actual entrustment of the goods by the delivery of possession of those goods to a merchant; (2) the party receiving the goods must be a merchant who deals in goods of that kind; (3) the merchant must sell the entrusted goods; and (4) the sale must be to a buyer in the ordinary course of business. (*Dan Pilson Auto Center, Inc. v. DeMarco* (1987), 156 Ill. App. 3d 617, 621, 509 N.E.2d 159, 162.) The record establishes there was no delivery or voluntary transfer of the sterling silver because plaintiffs were unaware of its place in the bags of clothes. Markland does not dispute this fact but dismisses it as immaterial.

Before the entrustment provisions of the UCC can be applied, a delivery is required. Plaintiff's act of unknowingly leaving the sterling silver with Goodwill is not equivalent to a voluntary transfer. The term "voluntary" is defined as: "proceeding from the will or from one's own choice or consent" and "done by design or intention." (Webster's Third New International Dictionary 2564 (1981).) We conclude the entrustment provisions of the UCC do not apply to this case.

■■■ We agree with the trial court that the silver was lost prop-

erty. Property is lost when it is unintentionally separated from the dominion of its owner. (*Paset*, 62 Ill. App. 3d at 537, 378 N.E.2d at 1268; *Michael*, 139 Ill. App. 3d at 382, 487 N.E.2d at 409.) The general rule is that the finder is entitled to possession of lost property against everyone except the true owner. (*Paset*, 62 Ill. App. 3d at 537, 378 N.E.2d at 1268.) We find this case is similar to *Michael*. There, file cabinets were sold "as is" by First Chicago to a second-hand office supply dealer. Several drawers in the cabinets were locked. The dealer gave the cabinets to an individual at a parking lot sale. Some of the file cabinets were still locked. The buyer from the dealer gave one locked cabinet without any keys to the plaintiff, Michael. Six weeks later, the cabinet fell over, the drawers opened, and Michael found over 1,600 negotiable certificates of deposit payable to "bearer" worth over $6 million. Testimony at trial revealed First Chicago was unaware the certificates were in the file cabinet it sold to the dealer. The plaintiff argued the certificates were abandoned property and, therefore, he was entitled to possession. The trial court entered judgment for First Chicago, reasoning that the plaintiff had not proved the certificates were abandoned. The appellate court affirmed and noted that the evidence clearly established that First Chicago intended only to sell used furniture to the dealer. Moreover, the evidence failed to establish that First Chicago intended to permanently give up all rights to the certificates. Thus, possession belonged to First Chicago.

As in *Michael*, plaintiffs here intended to donate only clothes to Goodwill and testified that Goodwill was advised the donation was clothes. The Goodwill employee who received the donation testified she did not recall being advised of the contents of the donation. Plaintiffs' testimony and prompt action remains unrebutted. We note a treatise on the UCC supports our conclusion:

"The Code does not alter the basic pre-Code concept that a possessor cannot pass title. Thus, in the absence of circumstances bringing the case within the scope of UCC §2—403, it follows that where the owner loses or is robbed of his property and the finder or thief, or anyone who has a temporary right to use it, attempts to sell or pledge it without consent, the owner may follow and reclaim it no matter in whose possession it may be found. That is to say, if the possession of the seller or pledgor is that of a bailee or a trespasser, the loss must fall on him whose act made the loss possible so as not to benefit the pledgee or vendee, for the latter stands in no better position than a person who innocently buys, leases, or ac-

quires property that has been stolen." 3 R. Anderson, Uniform Commercial Code, §2—403:26, at 584 (3d ed. 1983).

For the foregoing reasons, the order of the trial court is affirmed.

Affirmed.

GREEN, J., concurs.

JUSTICE LUND, specially concurring:

This case appears to present an issue of first impression. I consider the issue to be narrow and limited to whether a charitable retailer can convey good title to an item mistakenly delivered to the charity by a charitable donor. It is my opinion that the facts presented in this case are different than in *Michael v. First Chicago Corp.* (1985), 139 Ill. App. 3d 374, 487 N.E.2d 403, because in this case, the silver was the sale item, while in *Michael*, the file cabinets, not the certificates, were the sale items.

Section 2—403 of the Uniform Commercial Code—Sales (UCC) was intended to "state a unified and simplified policy on good faith purchase of goods." (Ill. Ann. Stat., ch. 26, par. 2—403, Uniform Commercial Code Comment, at 332 (Smith-Hurd 1963).) The comment following section 2—403 of the UCC, referring to subsection (2), states:

> "This subsection extends protection to bona fide purchasers of goods who qualify as 'buyers in the ordinary course of business' from a 'merchant who deals in goods of that kind.'" Ill. Ann. Stat., ch. 26, par. 2—403, Illinois Code Comment, at 331 (Smith-Hurd 1963).

A strong argument can be made that the description of "entrusting" under section 2—403(3) of the UCC would include the act of mistaken delivery. However, such an argument is not so compelling as to overcome the equitable interests of those having made the mistake. The absence of case law on this subject indicates the lack of substantial problems for the charitable retailers.

For the reasons stated, I concur in Presiding Justice McCullough's opinion and find plaintiffs' mistake did not equal an entrustment or a sale to Goodwill.