# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 01-3806

UNITED STATES OF AMERICA
EX REL. RICHARD FEINGOLD,

*Plaintiff-Appellant,*

v.

ADMINASTAR FEDERAL, INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 98 C 4392—**Ronald A. Guzmán**, *Judge.*

ARGUED OCTOBER 17, 2002—DECIDED MARCH 27, 2003

Before EASTERBROOK, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* Richard Feingold brought a *qui tam* action under the False Claims Act. On a motion for summary judgment, the district court concluded that it lacked subject matter jurisdiction because the information upon which Feingold based his suit was publicly disclosed and he was not the original source of that information. Although we conclude that the district court had jurisdiction, we hold that Feingold's suit fails as a matter of substantive law and therefore affirm the district court's entry of summary judgment.

## I.

Appellees Associated Insurance Companies, Inc., AdminaStar, Inc., and AdminaStar Federal, Inc. are companies that contracted with the Healthcare Financing Administration (HCFA) to approve or disapprove healthcare equipment providers' claims for reimbursement under Medicare. Appellant Richard Feingold is familiar with the approval process because he recently worked for a medical supply company and was involved in two other successful *qui tam* suits involving improper Medicare reimbursements. During the relevant time period, adult diapers were an item for which Medicare would not provide reimbursement. Feingold suspected that Appellees recklessly approved claims for diapers that were disguised as being for other, reimbursable items. Feingold's suspicions grew after he obtained and reviewed the following documents: (1) HCFA and Department of Health and Human Services (HHS) "fraud alerts" released to the public in 1994; (2) a newspaper article from July 1998 concerning the criminal indictment of two people for billing Medicare for diapers; (3) the criminal indictments of those people; (4) HCFA statistical reports, created in October 1998, showing the number of allegedly improper claims approved by appellees; and (5) papers from his previous litigation. After Feingold concluded that appellees had approved questionable claims in reckless disregard for their falsity and the government declined to pursue the matter, he filed the present action on July 17, 1998 under the False Claims Act (FCA), 31 U.S.C. §§ 3729-32, and amended the complaint on February 22, 2000. The district court determined that the five categories of documents were publicly disclosed and that Appellees were entitled to summary judgment because Feingold ran afoul of the FCA's prohibition of suits based on publicly disclosed "allegations or transactions"

where the plaintiff is not the original source of that information. Feingold appeals.

## II.

This court reviews the district court's grant of summary judgment *de novo,* construing all facts in favor of Feingold, the nonmoving party. *Commercial Underwriters Ins. Co. v. Aires Envtl. Services, Ltd.,* 259 F.3d 792, 795 (7th Cir. 2001). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "[s]ummary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party." *Commercial Underwriters,* 259 F.3d at 795. The district court granted summary judgment because it held, as a matter of law, that 31 U.S.C. § 3730(e)(4)(A), a provision that Congress added to the FCA in 1986 to prevent parasitic *qui tam* actions, denied the court jurisdiction. Section § 3730(e)(4)(A) provides as follows:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Although the statute uses the term "jurisdiction," and we have discussed application of § 3730(e)(4)(A) as turning

on a "jurisdictional bar," *United States ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853, 858 (7th Cir. 1999), the Supreme Court has held that what we are actually dealing with is an issue of substantive law. *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 950-51 (1997).[1] We review a dismissal under § 3730(e)(4)(A) *de novo, Mathews*, 166 F.3d at 859, considering:

> (1) whether the relator's allegations have been publicly disclosed;
>
> (2) if so, whether the lawsuit is "based upon" such public disclosures; and
>
> (3) if so, whether the relator is an "original source" of the information contained within the public disclosures.

*Id.* at 859.

## A. Were the allegations or transactions publicly disclosed?

We have explained extensively the historical underpinnings of the FCA in *Mathews, see id.* at 857-59, and shall not repeat them here. For our purposes, it suffices to reiterate that the function of a public disclosure is to bring to the attention of the relevant authority that there has been a false claim against the government. *Id.* at 861. Where

---

[1] That this analysis is one of substantive law, and not jurisdiction, mattered in *Hughes Aircraft* because there the dispositive question was whether the jurisdictional exception to the presumption against retroactivity applied. *See Hughes*, 520 U.S. at 950. No such consideration is relevant to this case; therefore, that § 3730(e)(4)(A) is substantive rather than jurisdictional does not materially affect our analysis.

a public disclosure has occurred, that authority is already in a position to vindicate society's interests, and a *qui tam* action would serve no purpose. *Id.* Where, on the other hand, a transaction or an allegation of fraud has not been publicly disclosed, society benefits by creating a monetary incentive for a knowledgeable person, called a relator, to identify the problem, present his information to the government, and, where the government declines to prosecute, proceed with a *qui tam* action under the FCA. *Id.* at 857-58. With those purposes in mind, we shall ascertain the meaning of the term "public disclosure" in the statute.

When interpreting the meaning of a statute, we look first to the text; the text is the law, and it is the text to which we must adhere. *See, e.g.*, *Miller Aviation v. Milwaukee County Bd. of Supers.*, 273 F.3d 722, 730 (7th Cir. 2001); *United States v. Evans*, 148 F.3d 477, 483 n.8 (5th Cir. 1998). This tenet of statutory interpretation leads us to join two of our sister circuits in holding that a "public disclosure" exists under § 3730(e)(4)(A) when the critical elements exposing the transaction as fraudulent are placed in the public domain. *United States ex rel. Rabushka v. Crane Co.*, 40 F.3d 1509, 1512 (8th Cir. 1994); *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). This definition makes sense both when standing alone as a matter of diction and when read in relation to the remainder of the statute.

We begin with diction. Congress enacted § 3730(e)(4)(A) in 1986. Contemporaneous definitions of "disclose" include: "to open up"; "to expose to view"; and "to make known or public." Webster's Ninth New Collegiate Dictionary 360 (1987). Although "public" has several definitions, the most germane to this topic is "accessible to or shared by all members of the community." *Id.* at 952. These defini-

tions comport with our holding here that a public disclosure happens when the critical elements exposing the transaction as fraudulent are placed in the public domain.

Similarly, this concept of what constitutes a public disclosure makes sense when read in the context of the entire statute because it is consistent with § 3730(e)(4)(A)'s function of prohibiting parasitic lawsuits. It also comports with the FCA's broader goal of encouraging lawsuits based on information that is not available to the public, and thus not available to the governmental authorities with direct responsibility for the claim in question. *See Mathews,* 166 F.3d at 858. This definition of "public disclosure" is consistent with our holding in *Mathews.* There, when analyzing discovery materials produced to a private litigant, this court concluded that until discovery materials are filed with the court, the discovery process conducted between litigants does not itself constitute a public disclosure within the ambit of § 3730(e)(4)(A). *See Mathews,* 166 F.3d at 860 (citing *United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514, 1521 (10th Cir.1996)).

We now must consider whether the five categories of documents upon which Feingold based this suit placed the critical elements of his allegations of fraud in the public domain. Feingold admits that the first three of those categories, the newspaper article, the criminal indictments, and the fraud alerts, were publicly disclosed information. Feingold maintains that the fourth category, the HCFA documents, was not publicly disclosed. As to the fifth and final category, papers from Feingold's previous FCA litigation, Feingold stipulates that the litigation documents that were filed were publicly disclosed, but argues in a footnote that "suppliers' claims containing patient medical information were not filed in . . .

previous *qui tam* lawsuits and therefore have not been publicly disclosed."

We turn first to the HCFA reports. Those documents were administrative reports; i.e., they were reports issuing from the HCFA, an agency of the federal government. Because the purpose of a public disclosure is to alert the responsible authority that fraud may be afoot, and that purpose is served where that authority has itself issued the reports containing information that substantiates an allegation of fraud, we hold that the HCFA reports were placed in the public domain. *See United States ex rel. Mistick PBT v. Housing Auth.*, 186 F.3d 376, 383 (3d Cir. 1999) (holding that an agency report prepared in response to a request under the Freedom of Information Act was publicly disclosed); *Gold v. Morrison-Knudsen, Inc.*, 68 F.3d 1475, 1477 (2d Cir. 1995) (reasoning that reports prepared for the Army Corps of Engineers were "publicly disclosed information").

Feingold attempts to avoid this conclusion by arguing that "the Government—through a Department of Justice Attorney—represented that it was unaware of any public disclosure." This argument misses the mark. Administrative reports are publicly disclosed because, by their very nature, they establish the relevant agency's awareness of the information in those reports. That a particular attorney of that agency may not know of that same information is of no moment; what concerns this analysis is whether the critical information was in the public domain, not whether one lawyer knew of the data. The district court was therefore correct when it reasoned that an "allegation or transaction can be publicly disclosed under the FCA even where a representative of the Government is unaware of any public disclosures."

We turn to the fifth and final category of information, Feingold's papers from his previous litigation against his former employer. As noted above, Feingold stipulates that the litigation documents that were filed in the clerk's office were publicly disclosed, but perfunctorily states that "suppliers' claims containing patient medical information were not filed . . . in [Feingold's] previous *qui tam* lawsuits and therefore have not been publicly disclosed." The problem with Feingold's argument is that he does not tell us anything about those papers, nor does he cite to any part of the record from which we could examine them. We are thus in no position to know whether those documents are even of relevance to this case, and we hold that there is no genuine issue of material fact as to prong one: all of the information upon which this suit could have been based was publicly disclosed.

## B. Was Feingold's suit based on publicly disclosed information?

We now turn to prong two of our analysis, asking whether the lawsuit is based upon public disclosures. Under § 3730(e)(4)(A), a lawsuit is based upon public disclosures when it "both depends essentially upon publicly disclosed information and is actually derived from such information." *Mathews*, 166 F.3d at 864. Because Feingold points to no evidence upon which this suit depends that is not publicly disclosed, we hold that Feingold has based this action on publicly disclosed documents and must address the third and final prong of analysis, asking whether Feingold is an "original source" of the information contained within the public disclosures.

### C. Is Feingold an original source?

An original source of information under the FCA must meet two criteria. First, he must be original; i.e., he must have "direct and independent knowledge of the information on which the allegations are based." *Mathews*, 166 F.3d at 865 (quoting 31 U.S.C. § 3730(e)(4)(B)). Or, in other words, he must be "someone who would have learned of the allegation or transactions independently of the public disclosure." *Id.* Second, he must be a source; i.e., he must "have voluntarily provided the information to the Government" before instituting a suit. *Id.* In his opening brief, Feingold points to no evidence in the record that would allow a reasonable factfinder to conclude that he would have learned of the allegation or transactions independently of the public disclosures, instead offering us the conclusory assertion that "through his own investigation, [Feingold] gathered the information necessary in order to make the allegations against" Appellees. We therefore find no fault with the district court's holding as a matter of law that Feingold was not an original source. Feingold simply adduces no evidence that would allow a factfinder to reach the opposite conclusion.

### III.

The district court correctly concluded, as a matter of law, that Feingold is not an original source and that he based this *qui tam* action on publicly disclosed information. Section 3730(e)(4)(A) therefore bars this action and we affirm the entry of summary judgment in appellees' favor.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*