In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1524

CITY OF CHICAGO,

*Plaintiff-Appellee,*

EX REL. AARON M. ROSENBERG,

*Plaintiff-Appellant,*

*v.*

REDFLEX TRAFFIC SYSTEMS, INC. and
REDFLEX HOLDINGS, LTD.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 15-cv-08271— **John J. Tharp**, *Judge.*

ARGUED FEBRUARY 13, 2018 — DECIDED March 12, 2018

Before SYKES and BARRETT, *Circuit Judges*, and GRIESBACH, *District Judge.*[*]

GRIESBACH, *District Judge.* In this classic case of chutzpah, Aaron Rosenberg, a former employee of Redflex Traffic Systems, Inc. (RTSI), seeks a share of the proceeds his former employer paid the City of Chicago to settle the case against it arising out of the fraud Rosenberg helped perpetrate. In a thorough decision, the district judge concluded that Rosenberg was neither the original source of the information on which the action was based, nor was he a volunteer within the meaning of the Chicago false claims ordinance that authorized the action. The district court therefore granted the defendants' motion to dismiss Rosenberg's claim for lack of jurisdiction and denied Rosenberg's request for attorney's fees. Compounding his audacity even more, Rosenberg appeals. We now affirm.

## I. Background

RTSI, a Delaware corporation with its principal place of business in Arizona, produces and maintains traffic safety systems for various governmental entities. Aaron Rosenberg, a citizen of California, was RTSI's Vice President of Sales and Marketing for North America. In 2003, RTSI entered into a contract with the City of Chicago to manage the City's digital automated red light enforcement program (DARLEP). John Bills, the deputy-commissioner of the City's Department of Transportation at the time, was responsible for overseeing the

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

City's contract with RTSI. RTSI retained Martin O'Malley to be its Chicago liaison for the contract.

In March 2012, the Chicago Tribune began printing a series of articles that inquired about the relationship between RTSI and Bills. On March 13, 2012, the Tribune explained that the City sought bids to replace the red-light cameras with automated speed cameras and that Resolute Consulting LLC, a consulting firm that worked closely with RTSI, promoted RTSI's bid for the project. The article reported Bills, who had supervised RTSI's DARLEP contract with the City, had recently retired from his position with the City and now worked for Resolute and the RTSI-funded Traffic Safety Coalition.

On October 14, 2012, the Tribune published an article entitled "City red-light camera vendor under scrutiny," which questioned the friendship of Bills and O'Malley. Its investigation revealed that Bills had ties to O'Malley before the City entered into the DARLEP contract with RTSI. Though RTSI claimed it was unaware of this relationship at the time it hired O'Malley to be its Chicago liaison, the Tribune reported it obtained a copy of an August 2010 letter from an RTSI executive to Redflex Holdings, Ltd. (RHL), RTSI's Australian parent company, which acknowledged Bills' relationship with O'Malley, asserted O'Malley's role in the DARLEP contract with the City was unnecessary, and alleged Rosenberg's expense report revealed RTSI had paid the tab for one of Bills' stays at a luxury hotel in Phoenix, Arizona in 2010. The article noted RTSI required that Rosenberg attend anti-bribery training but did not report the incident to the City's Board of Ethics. Three days later, the Tribune reported the City removed

RTSI's bid for the new speed camera contract because it failed to report Rosenberg's conduct to the Board of Ethics. It revealed that the City Office of Inspector General (OIG) sought to investigate the allegations related to the bribery scheme.

On October 18, 2012, the OIG notified RTSI of the pending investigation, advised RTSI that it had an obligation to cooperate, and served a request for documents on the company. RTSI subsequently hired the law firm Sidley Austin to facilitate its own independent investigation into the bribery allegations and to assist the company with the OIG investigation. In the meantime, the Tribune continued to report on the bribery scheme. It reiterated that the City had rejected RTSI's bid for the new contract because it was a "non-responsible bidder" and noted Bills was asked to resign from his post on the Cook County Employee Appeals Board. The Tribune reported Sidley Austin would assist RTSI in cooperating with the OIG's investigation and conduct an internal investigation, and revealed RHL filed a report with the Australian Securities Exchange advising that it would take appropriate actions to ensure its commitment to the highest ethical standards.

On January 31, 2013, Sidley Austin attorney Scott Lassar met with an OIG representative to provide information about RTSI's relationship with Bills which included RTSI's findings that RTSI paid for Bills' and O'Malley's hotel, airfare, and golf expenses seventeen times; that Bills initiated the bribery scheme by offering to help RTSI secure the camera contract in exchange for compensation; that Bills suggested RTSI hire O'Malley to serve as the liaison for the contract and facilitate the payments from RTSI to Bills; that RTSI paid O'Malley over

$2,000,000 from 2003 to 2012; and that Network Electric was a potential conduit for payments to Bills.

As part of the investigation, an OIG representative met with Rosenberg, who was represented by counsel, on February 4, 2013. An attorney from Sidley Austin was also present. The OIG advised Rosenberg that he had a duty to cooperate with the investigation and that his statements would not be used against him in a criminal proceeding. During the interview, which lasted nearly a full day, Rosenberg described the bribery scheme between RTSI and Bills. He revealed the travel and other benefits RTSI provided to Bills, O'Malley's involvement as a conduit for RTSI's payments to Bills, the communications within RTSI about the scheme, and upper management's knowledge of the scheme. RTSI terminated Rosenberg's employment with the company on February 20, 2013.

Four days after Rosenberg's interview, the Chicago Tribune reported the conclusions of RTSI's investigation. It noted the investigation revealed company executives courted Bills with thousands of dollars in free trips to the Super Bowl and other events and raised questions into the company's hiring of O'Malley. The Tribune revealed RTSI would lose its DARLEP contract with the City. On February 22, 2013, the Tribune reported that RTSI terminated Rosenberg for his "dishonest and unethical conduct" and filed a lawsuit against him in Maricopa County, Arizona, regarding the bribery scheme. In a March 2013 article, the Tribune disclosed that RTSI's attorneys acknowledged that it was "likely true" that its officials intended to bribe Bills. On March 4, 2013, the Tribune noted RHL had filed a public summary of the investigation with the Australian Securities Exchange. The Tribune reported

the scheme came under federal criminal investigation in a March 16, 2013 article. Reports regarding the bribery scheme continued into 2014.

On April 15, 2014, Rosenberg filed this action against RTSI under seal pursuant to the *qui tam* provision of the City's False Claims Ordinance (FCO), Chicago Municipal Code §§ 1-22-010 *et seq.*, in the Circuit Court for Cook County. Rosenberg alleged RTSI engaged in a bribery scheme and other illegal activities to obtain a contract with the City related to its digital automated red-light camera enforcement program. The City subsequently intervened in the action, and RTSI removed the case to federal court, asserting diversity jurisdiction under 28 U.S.C. § 1332. The City then amended the complaint to include allegations against RHL and supplemented the FCO claim with additional claims under the Chicago municipal code, Illinois statutes, and common law.

On February 16, 2016, RTSI and RHL moved to dismiss Rosenberg as relator pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. The court granted the motion and dismissed Rosenberg as relator. The City, RTSI, and RHL reached a settlement and moved to dismiss the lawsuit with prejudice on February 6, 2017. Rosenberg filed a petition for an award of a relator's share of the settlement proceeds and attorney's fees for his lawyer's contributions to the case. The district court denied Rosenberg's petition. Rosenberg now appeals both district court decisions.

## II. Analysis

We review the district court's dismissal for lack of subject-matter jurisdiction *de novo*. *Glaser v. Wound Care Consultants,*

*Inc.*, 570 F.3d 907, 912 (7th Cir. 2009) (citing *Scott v. Trump Ind., Inc.*, 337 F.3d 939, 942 (7th Cir. 2003)); *see also United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 707 (7th Cir. 2014) ("We review *de novo* challenges made pursuant to the FCA's bars." (citing *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 494–95 (7th Cir. 2003))). Yet, we review findings of fact considered in determining jurisdiction only for clear error. *Absher*, 764 F.3d at 707 (citations omitted).

The City's FCO is an anti-fraud ordinance that closely mirrors the federal False Claims Act (FCA), 31 U.S.C. §§ 3729 *et seq.* Under the ordinance, a party that engages in fraud against the City is liable for civil penalties and treble damages. Chi. Mun. Code § 1-21-010. An action may be brought on behalf of the City by either corporation counsel or a private person, a relator, through the FCO's *qui tam* provision. *Id.* § 1-22-030. The City may choose to intervene in a *qui tam* action or allow the relator to proceed alone. If the relator remains as a party, he is entitled to a percentage of any proceeds or settlement that is obtained. *Id.* In addition, the ordinance provides that a person who is entitled to a share of proceeds shall also receive reasonable attorney's fees and costs. *Id.* § 1-22-030(d)(3). The FCO contains a public disclosure bar to suit, which states:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a legislative, administrative, or Inspector General's report, hearing audit, or investigation, or from

> the news media, unless the action is brought by the corporation counsel or the person bringing the action is an original source of the information … ."

*Id*. § 1-22-030(f).

Notwithstanding several amendments to the FCA in 2010, the district court here, with the agreement of the parties, looked to federal case law construing the FCA in applying the FCO. We do as well. Given the substantive similarity between the Illinois False Claims Act (IFCA), 740 Illinois Compiled Statutes 175/4, and the FCA, Illinois courts have relied upon federal cases interpreting the FCA in construing the provisions of the IFCA. *See People ex rel. Schad, Diamond & Shedden, P.C. v. My Pillow, Inc.*, 82 N.E.3d 627, 632 (Ill. App. Ct. 2017) (noting that in construing the IFCA, "Illinois courts have relied on federal courts' interpretation of the Federal False Claims Act for guidance"). We are confident Illinois courts would likewise look to federal FCA cases in interpreting the FCO.

In federal FCA cases, we apply a three-step analysis in determining whether the public disclosure bar prevents an individual from acting as relator. *See Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 274 (7th Cir. 2016) (citing *Glaser*, 570 F.3d at 913). First, the court examines whether the allegations in the complaint have been "publicly disclosed" before the relator filed the complaint. The court then determines whether the relator's lawsuit is "based upon" those publicly disclosed allegations. If these first steps are satisfied, the public disclosure bar applies unless the relator is an "original source" of the information upon which the lawsuit is based. *Id.* The

relator bears the burden of proof at each step of the analysis. *Glaser*, 570 F.3d at 913 (citations omitted).

### A. Public Disclosure

The court first turns to whether the information contained in Rosenberg's complaint was publicly disclosed. Facts are publicly disclosed when the "critical elements exposing a transaction as fraudulent are placed in the public domain." *Feingold*, 324 F.3d at 495. Rosenberg's argument assumes that the court is to consider whether the information relating to the bribery scheme had been publicly disclosed at the time of his February 4, 2013 interview with the OIG. But that is not the standard. Instead, the court must consider whether the facts Rosenberg alleged in his complaint had been publicly disclosed at the time the complaint was filed. As the district court thoroughly demonstrated in a chart comparing the allegations of Rosenberg's complaint with the publicly disclosed information, they were.

As early as October 2012, the Chicago Tribune published articles relating to the bribery scheme and the relationship between Redflex, Bills, and O'Malley. In particular, the Tribune reported on October 14, 2012, that an RTSI executive (not Rosenberg) had alleged two years earlier that there was an improper relationship between Bills and O'Malley; that O'Malley's role as liaison between RTSI and the City was unnecessary; that Bills began working for the RTSI-funded Traffic Safety Coalition after retiring from the City; and that RTSI had paid for Bills' stay at a luxury hotel in Phoenix, Arizona. The Tribune also confirmed that the City's OIG was investigating any wrongdoing involving RTSI's relationship

with Bills. In November 2012, the Tribune remarked that RTSI hired Sidley Austin to assist with its response to the OIG's investigation and to begin its own internal investigation. Throughout 2013 and 2014, the Tribune continued to run articles on the investigation. The Tribune articles reported that RHL submitted a press release to the Australian Securities Exchange on March 4, 2013, which summarized the results of its internal investigation; that RTSI terminated Rosenberg and other executives based on that investigation; and that RTSI filed a lawsuit against Rosenberg in Maricopa County, Arizona, which alleged Rosenberg made inappropriate payments on behalf of Redflex to employees or customers. In short, the dozens of articles printed by the Tribune and RHL's March 2013 press release placed "critical elements exposing the transaction as fraudulent" in the public domain. *Id.* There is no doubt that by April 15, 2014, the day Rosenberg filed his complaint, the bribery scheme had been publicly disclosed.

### B. Based Upon

Though the information contained in Rosenberg's complaint was publicly disclosed, he may avoid the public disclosure bar if his action is not "based upon" those disclosures. A relator's complaint "is 'based upon' publicly disclosed allegations or transactions when the allegations in the relator's complaint are substantially similar to publicly disclosed allegations." *Glaser*, 570 F.3d at 920. Importantly, the question is not whether the allegations in the relator's complaint depend upon or are derived from the publicly disclosed information. *Id.* at 914–15. Because he had "inside knowledge" of the bribery, Rosenberg's allegations likely were not either dependent upon or derived from the public

disclosures. But that is no longer the test. *Id.* at 920, *overruling United States v. Bank of Farmington*, 166 F.3d 853 (7th Cir. 1999), *and United States ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730 (7th Cir. 2007)).

Under current law, a relator must "present 'genuinely new and material information' beyond what has been publicly disclosed." *Cause of Action*, 815 F.3d at 281 (quoting *United States ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 935–36 (7th Cir. 2012)). Rosenberg asserts his complaint adds details not explicitly contained in the Tribune's articles. But these details alone are not enough to establish that his allegations are not substantially similar to the publicly disclosed information. After all, Rosenberg's complaint describes the same bribery scheme involving Bills, O'Malley, and RTSI that was publicly disclosed through the Tribune articles that chronicled the events, nature, and scope of the scheme for nearly two years. The information that may have been added in Rosenberg's complaint is not "genuinely new or material" such that the complaint is not based upon the publicly disclosed allegations. *Goldberg*, 680 F.3d at 936. It thus follows that Rosenberg's claim is barred unless he can show that he is an "original source" of the information.

### C. Original Source

Because the allegations contained in Rosenberg's complaint are substantially similar to the information already available in the public domain at the time he filed the action, Rosenberg may act as relator only if he is an "original source" of the information. *Glaser*, 570 F.3d at 921. Under the FCO, an original source is "an individual who has direct and independent

knowledge of the information on which the allegations are based and has voluntarily provided the information to the city before filing an action under this section which is based on the information." Chi. Mun. Code § 1-22-030(f). The parties do not dispute that Rosenberg had direct knowledge of the scheme through the nature of his employment with RTSI. Therefore, we need only address whether Rosenberg "voluntarily provided" the information.

Although the FCO does not define the term "voluntarily," several courts have addressed this issue under the FCA. In *United States ex rel. Barth v. Ridgedale Electric Inc.*, for instance, an electrical worker and electrical workers' union filed a *qui tam* action on behalf of the United States, alleging a federal contractor had violated the FCA by submitting false payroll reports to the government for a federally funded construction project. 44 F.3d 699, 701 (8th Cir. 1995). The Eighth Circuit held that the district court properly dismissed the action for lack of subject matter jurisdiction because the Union did not have direct knowledge of the false claims and the worker's disclosure was not voluntary. The court held that the disclosure by the worker, Barth, was not voluntary because he only produced the information in response to discussions initiated by a federal investigator, even though he knew about the fraudulent activities for more than two years. *Id.* at 704. The court reasoned that finding Barth's disclosure to be voluntary would ignore the Act's purpose, "which is to encourage private individuals who are aware of fraud against the government to bring such information forward at the earliest possible time and to discourage persons with relevant information from remaining silent." *Id.* Rewarding Barth now

"for merely complying with the government's investigation," the court concluded, "is outside the intent of the Act." *Id.*

Similarly, in *United States ex rel. Paranich v. Sorgnard*, the Third Circuit held that the relator's disclosure in response to a subpoena was not voluntary because information "not specifically compelled but nonetheless brought forward as a result of the government's pointed contact should not be deemed 'voluntarily' provided." 396 F.3d 326, 341 (3d Cir. 2005). The court acknowledged that "voluntariness" would be undermined if it allowed "a relator to extract the benefit of a *qui tam* action where his participation in the investigation was precipitated by a subpoena and sustained by self-interest, with all indications suggesting that the relator would not have come forward otherwise." *Id.*

Rosenberg asserts these cases are distinguishable from the instant one because he was not legally compelled or obligated to participate in the OIG investigation, submit to an interview, or provide any information to the City. He also argues that because the FCO is an Illinois municipal ordinance, the court must consult the Illinois state appellate courts to determine its meaning. Citing *Kahr v. Markland*, 543 N.E.2d 579, 582 (Ill. App. Ct. 1989), in which the Appellate Court of Illinois defined the term "voluntary" to mean "proceeding from the will or from one's own choice or consent," Rosenberg argues that his disclosure to the OIG falls within this definition.

The definition of "voluntary" in *Kahr* has no application here. The meaning of a word differs according to the context in which it is used. *See Yates v. United States*, 135 S. Ct. 1074, 1082 (2015) ("In law as in life, however, the same words, placed in

different contexts, sometimes mean different things."). *Kahr* dealt with a "voluntary transfer of possession" with respect to "instruments, documents of title, chattel paper or certified securities" under the UCC, 543 N.E.2d at 582, a context entirely different from the FCO. To apply that definition here would ignore the clear purpose of the FCO, "which is to encourage private individuals who are aware of fraud against the government to bring such information forward at the earliest possible time and to discourage persons with relevant information from remaining silent." *Barth*, 44 F.3d at 704. To accomplish that purpose, "voluntary," as used in the FCO, must mean something more than the absence of physical coercion or immediate legal compulsion.

In *Glaser*, we noted that the voluntary disclosure requirement "is designed to reward those who come forward with useful information and not those who provide information in response to a governmental inquiry." 570 F.3d at 917 (citing *Paranich*, 396 F.3d at 338–41). The latter is precisely what Rosenberg did here. Even though he was not served with a subpoena, his disclosures to the OIG cannot be deemed voluntary. As the district court found, his disclosures were motivated purely by his own self-interest. The OIG requested Rosenberg submit for an interview and provide information in exchange for an express immunity agreement. Having read the writing on the wall, Rosenberg divulged information about the bribery scheme in which he was an active and essential participant for nearly ten years. Rosenberg did not voluntarily initiate contact with the OIG and only provided information once he was contacted as part of the City's investigation. To hold that Rosenberg's disclosure was

voluntary simply because no formal legal process required his cooperation in the investigation would frustrate the FCO's essential goal of motivating true volunteers and transform the ordinance into a vehicle for fraudsters to evade responsibility while at the same time profiting further from their crimes. No reasonable reading of the FCO requires such a result. Rosenberg's disclosures were not voluntary, and the district court correctly concluded Rosenberg did not qualify as an original source of the information.

### D. Entitlement to Proceeds and Attorney's Fees

Finally, Rosenberg asserts that, as the individual who brought the action, he is entitled to a portion of the settlement proceeds as well as attorney's fees and costs. The FCO's award provision reads: "If the city proceeds with an action brought by a person under this section, such person shall … receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim … ." Chi. Mun. Code § 1-22-030(d)(1).

But the language of the public disclosure bar is that "[n]o court shall have jurisdiction" over an action to which the bar applies. *Id.* § 1-22-030(f). In *Rockwell Corp. v. United States*, 549 U.S. 457 (2007), the Court held that "an action originally brought by a private person, which the Attorney General has joined, becomes an action brought by the Attorney General once the private person has been determined to lack the jurisdictional prerequisites for suit." *Id.* at 478. Although the

language expressly barring jurisdiction was removed from the FCA by the 2010 amendments, thereby calling into question *Rockwell*'s holding that the public disclosure exception to the FCA is jurisdictional, *see Cause of Action*, 815 F.3d at 271 n.5, the FCO has not been similarly amended and thus its jurisdictional bar remains. Applying *Rockwell*, then, it follows that because the City intervened in the action and Rosenberg is jurisdictionally barred from acting as relator under the public disclosure bar, he is no longer considered the individual who brought the action.

Rosenberg attempts to avoid *Rockwell* by drawing a distinction between the relator as a party and the "person bringing the action." *Rockwell* does not apply, he argues, because he is seeking a share of the settlement and attorney's fees not as a relator but as the "person bringing the action." We agree with the district court that the distinction Rosenberg attempts to draw finds no support either in the holding of *Rockwell* or in logic. A relator in a *qui tam* action is the person bringing the action, and to adopt Rosenberg's interpretation of the FCO would effectively read the public disclosure bar out of the ordinance.

Because the FCO authorizes the district court to award Rosenberg fees and a portion of the recovery only if this is "an action brought by" Rosenberg, his dismissal under the public disclosure bar forecloses his claim to the benefits of the lawsuit. The judgment of the district court is therefore AFFIRMED.